United States District Court
Western District of Texas
San Antonio Division

| | § | |
|---|---|---|
| IN RE ISAAC VELA and | § | |
| CHRISTINA H. VELA | § | |
| DEBTORS. | § | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | § | Civil Action No.: SA-08-CA-815 XR |
| | § | |
| ROSARIO DIVINS | § | Bankruptcy Case No: 06-50568-lmc |
| APPELLANT. | § | |
| | § | |

**ORDER**

On this date, the Court considered Appellant Rosario Divins's appeal from the Bankruptcy Court's Order of Civil Contempt. After considering the record, applicable law, and the arguments of counsel, the Court AFFIRMS the Bankruptcy Court's Order of Civil Contempt.

**I. BACKGROUND**

This appeal arises from a Show Cause Hearing in a Chapter 13 Bankruptcy proceeding. On April 1, 2006, Isaac Vela and Christina H. Vela filed a petition for relief under Chapter 13 in the United States Bankruptcy Court for the Western District of Texas. During the Velas' bankruptcy proceeding, their mortgage note matured, and their automatic stay was terminated. On January 25, 2008, the bankruptcy case was voluntarily dismissed pursuant to an agreed order. Shortly after, the Velas' home was posted for foreclosure. A few days later, they received a solicitation from Rosario C. Divins claiming she could help them stop the foreclosure. Divins's actions regarding the Velas'

1

foreclosure and subsequent court proceedings pertaining to those actions are the subject of this appeal.

## A. Divins's History with the Western District of Texas

Divins's history with the Western District of Texas spans almost fifteen years.[1] On October 26, 1994, the Honorable Ronald B. King of the United States Bankruptcy Court for the Western District of Texas entered an Order (*"Lara* Order") providing that Divins not engage in the unauthorized practice of law or provide counsel in bankruptcy proceedings. Six years later, on January 15, 2000, the Honorable Leif M. Clark, also of the United States Bankruptcy Court for the Western District of Texas, entered the first *Gutierrez* Order, which permanently enjoined Appellant from engaging in several bankruptcy and foreclosure services. Relevant to this case, Divins was ordered not to make *any* representations express or implied that she can help stop individuals' foreclosure proceedings or that her mortgage brokering services can stop individuals' foreclosure proceedings. On April 19, 2000, the Bankruptcy Court entered the second *Gutierrez* Order, which found that Appellant had engaged in prohibited conduct and reiterated the permanent injunction contained in the first *Gutierrez* Order. Two months later, Appellant agreed to refrain from the conduct outlined in the first and second *Gutierrez* Order by signing "the Agreed Order" on June 9, 2000.

On September 26, 2003 in a subsequent case, the Bankruptcy Court found Appellant in

---

[1]The following synopsis of Divins's history with the Western District is borrowed largely from *In re Rodriguez*, another case involving Divins. No. 05-55166-LMC, U.S. Dist. LEXIS 11858 (W.D. Tex. Feb. 20, 2007). In *Rodriguez*, the Court provides a more detailed description of Divins's history with the District.

contempt for violating the terms of the Agreed Order and issued the *Guerrero* Order, which outlined a prospective fine schedule of $5,000 per violation (independent of any actual damages) in the event that Appellant violated the terms of the Agreed Order in the future. The Bankruptcy Court ordered Divins to make a $6,000 refund to the debtors and required her to pay a $15,000 fine to the Clerk of the Bankruptcy Court as punishment for violating the order. Divins appealed the Bankruptcy Court's decision. On February 20, 2007, this Court affirmed the $6,000 refund to the debtors, determining that the refund constituted a valid exercise of the Bankruptcy Court's civil contempt power. However, the Court vacated the Bankruptcy Court's order requiring Divins to pay the $15,000 fine because Supreme Court and Fifth Circuit precedent prohibit bankruptcy courts from entertaining criminal contempt sanctions. The Court noted that, although the Bankruptcy Court could not order Divins to pay the fine, the Bankruptcy Court could certify the criminal contempt matter to the District Court for further proceedings. On June 22, 2007, the Bankruptcy Court certified the criminal contempt matter to the District Court.

In sum, Divins is currently bound by five orders: (1) the *Lara* Order, (2) the first *Gutierrez* Order, (3) the second *Gutierrez* Order, (4) the Agreed Order—binding her to the first and second *Gutierrez* Order, and (5) the *Guerrero* Order.

**B.     The Velas' Case**

The Velas came in contact with Divins after their home was posted for foreclosure to occur on February 5, 2008. The Velas claim that after they were notified of the foreclosure they received a solicitation from Divins via the U.S. mail. Subsequently, the Velas met with Divins and gave her $2,800.00 cash to stop the foreclosure sale on their home. Divins did not stop the foreclosure sale,

3

and the property was sold to a third party. After the foreclosure sale, the Velas were evicted from their home. They went back to Divins who allegedly told them that she could get their home back. Based on these representations, the Velas claim they gave Divins $4,000. The Velas never moved back into their home and written demands to Divins to return their money were ignored.

On May 22, 2008, the Velas filed a motion to re-open their bankruptcy case for the purpose of pursuing a motion for contempt against Rosario Divins. Specifically, the Velas' motion alleged that Divins violated the Agreed Order and the *Guerrero* Order, which prohibited her from representing that she could "stop foreclosures" or had "mortgage brokering" services that could stop foreclosures. The Bankruptcy Court re-opened the Velas' bankruptcy case, and on June 17, 2008, the court issued a Show Cause Order to Divins. On August 20, 2008, the Bankruptcy Court held a Show Cause Hearing and found Divins in civil contempt and certified the criminal contempt matter for consideration by the District Court. The Bankruptcy Court ordered Divins to pay the Velas $2,800 in restitution for "the amount they paid to her in cash to stop the foreclosure of their home."

On September 11, 2008, the Bankruptcy Court entered the civil contempt and certification of criminal contempt orders against Divins. As to the Bankruptcy Court's certification of criminal contempt, on December 3, 2008, a grand jury indicted Divins on fourteen counts, including Count Three, intentionally disobeying, resisting, and violating

> a lawful writ, process, order, rule, decree and command of the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, namely *The First Gutierrez Order, The Agreed Order* and *The Guerrero Order* in conjunction with the Defendant's interaction with [the Velas].

The indictment also included the Bankruptcy Court's certification of the criminal contempt matter from *In re Rodriguez*. On June 15, 2009, Divins's case went to trial before The Honorable Fred

4

Biery of the Western District of Texas. Two days later, the jury found her guilty of all fourteen counts, and Judge Biery set her sentencing hearing for September 11, 2009. On that day, Judge Biery sentenced Divins to 25 years in prison.

**C.    Divins's Appeal**

As to the Bankruptcy Court's determination that Divins was in civil contempt, on September 19, 2008, Divins filed a Notice of Appeal with this Court. Divins raises three points on appeal. First, Divins claims that the Bankruptcy Court did not have jurisdiction to reopen the Velas' bankruptcy case and enforce the Agreed Order and the *Guerrero* Order. Second, Divins argues that the Court erred in determining that there is sufficient evidence to support a finding of contempt. Finally, Divins argues that the Bankruptcy Court's previous orders are void as they are impermissibly vague and ambiguous.

## II. STANDARD OF REVIEW

Whether a bankruptcy court has jurisdiction is a question of law. *In re Grand Jury Proceedings*, 115 F.3d 1240, 1243 (5th Cir. 1997). Thus, the Court reviews Divins's challenge to the Bankruptcy Court's jurisdiction de novo. The Court reviews Divins's challenge to the Bankruptcy Court's civil contempt order for an abuse of discretion. *United States v. City of Jackson*, 359 F.3d 727, 731 (5th Cir. 2004) (explaining the appellate standard of review for civil contempt is whether the trial court abused its discretion). Finally, the Court reviews the construction of the Bankruptcy Court's order de novo. *See In re Nat'l Gypsum Co.*, 219 F.3d 478, 484 (5th Cir. 2000).

## III. ANALYSIS

### A. Jurisdiction

Divins claims that the Bankruptcy Court does not have the power to reopen the Velas' Bankruptcy case to enforce the Agreed Order and the *Guerrero* Order and that the Bankruptcy Court lacks jurisdiction over the Velas' motion. The Court disagrees.

First, following the well-established rule that the substance and not the title of a motion controls, the Court determines although the Velas' motion was titled a "Motion to Re-Open a Bankruptcy Case" in substance and function it served as a motion to enforce the Bankruptcy Court's orders. *Edwards v. City of* Houston, 78 F.3d 983, 995 (5th Cir. 1996). Thus, the proper inquiry is whether the Bankruptcy Court has jurisdiction over the Velas' motion to enforce the Agreed Order and the *Guerrero* Order. It does.

Bankruptcy Courts "maintain jurisdiction to interpret and enforce their own orders to ensure their proper execution" long after bankruptcy cases are closed or dismissed. *In re Nat'l Benevolent Ass'n of the Christian Church*, No. 08-50677, 2009 WL 1649485 *4 (5th Cir. 2009) (citing *In re Millenium Seacarriers, Inc.,* 419 F.3d 83, 97 (2d Cir. 2005) ("Bankruptcy Courts maintain jurisdiction to enforce their own orders."). To say otherwise would weaken bankruptcy courts' power to administer justice and compel debtors and creditors to comply with the courts' orders. *See* Timothy L. Bertschy & Nathaniel E. Strickler, *The Power Behind the Robe: A Primer on Contempt Law*, 97 Ill. B.J. 246, 247 (2009). This case serves as a prime example of the importance of a Bankruptcy Court's ability to issue civil contempt orders and certify criminal contempt matters. On several different occasions in various documents and orally, multiple courts prohibited Divins from

engaging in behavior that may lure individuals into using her bankruptcy and foreclosure services. She did not comply. Therefore, the Bankruptcy Court was well within its jurisdictional bounds to enforce its orders and disgorge Divins of any monetary gain that resulted from her interactions with the Velas.

B.   **Insufficient Evidence of Contempt**

Because the Court determines that the Bankruptcy Court had jurisdiction over the Velas' motion, the question still remains whether there was sufficient evidence to support the Bankruptcy Court's finding of contempt. Divins claims that the Velas' testimony and the testimony of another witness make no clear allegations that she violated any of the Bankruptcy Court's orders. Divins also argues that during her testimony she did not admit to violating any of the orders. However, these arguments are moot because collateral estoppel precludes Divins's insufficient evidence claim.

The Court notes that the Velas did not raise the affirmative defense of collateral estoppel in their brief to this Court as is required under Federal Rule of Civil Procedure 8(c). However, the Fifth Circuit has recognized two limited instances in which a trial or appellate court may raise collateral estoppel sua sponte: (1) "if both actions are brought in courts of the same district" and (2) in situations where all relevant data and legal records are before the court and "comity, continuity in the law, and essential justice" require that collateral estoppel be applied. *Carbonell v. Louisiana Dep't of Health & Human Res.*, 772 F.2d 185, 189 (5th Cir. 1985) (discussing situations where a court can raise res judicata sua sponte); *see also Meador v. McFaddin*, No, 99-40834, 1999 WL 129938 *1 (5th Cir. 1999) (citing *Carbonell* and noting that the exceptions for raising res judicata sua sponte apply to collateral estoppel). The first exception is applicable to this case because all of Divins's

7

court proceedings and orders prohibiting Divins's actions, as well as Divins's recent conviction and sentencing for criminal contempt, occurred in the Western District of Texas. Accordingly, the Court raises collateral estoppel sua sponte and determines that collateral estoppel precludes Divins from challenging the factual sufficiency of the Bankruptcy Court's finding of civil contempt due to her conviction for criminal contempt arising from the same proceeding. Below, the Court applies collateral estoppel to Divins's claims.

Collateral estoppel is the idea that "a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction cannot be disputed in a subsequent suit between the same parties or their privies." 47 Am. Jur. 2d JUDGMENTS § 464 (2008); *see also Blonder-Tongue Lab., Inc. v. Univ. of Illinois Foun.*, 402 U.S. 313, 328–329 (1971) (explaining that collateral estoppel has the "dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation"). This affirmative defense works to preclude an issue from being raised in subsequent litigation. *Blonder-Tongue Lab., Inc.*, 402 U.S. at 329. In order for collateral estoppel to take effect, the following criteria must be established: (1) the issue under consideration in a subsequent action must be identical to the issue litigated in a prior action, (2) the issue must have been fully and vigorously litigated in the prior action, (3) the issue must have been necessary to support the judgment in the prior case, and (4) there must be no special circumstance that would render preclusion inappropriate or unfair. *United States v. Shanbaum,* 10 F.3d 305, 311 (5th Cir. 1994). Here, all of these elements are present.

### (1) Do the criminal and civil contempt proceedings involve identical issues?

The primary issue presented in this case—whether there is evidence to prove that Divins violated the Bankruptcy Court's orders—is identical to the matter litigated in Divins's criminal contempt case. A conviction for criminal contempt under 18 U.S.C. § 401(3) requires proof beyond a reasonable doubt of a (1) reasonably specific order, (2) violation of the order, and (3) the willful intent to violate the order. *Cooper v. Texaco,* 961 F.2d 71, 72 n. 3 (5th Cir. 1992)). Similarly, for a finding of civil contempt, a movant must prove that there is clear and convincing evidence that (1) a court order was in effect, (2) the order required certain conduct by the respondent, and (3) the respondent failed to comply with the court's order. *Whitcraft v. Brown*, 70 F.3d 268, 271 (5th Cir. 2009).

The only substantive differences between the two types of contempt are (1) criminal contempt has a higher standard of intent than civil contempt and (2) criminal contempt must be established beyond a reasonable doubt, whereas civil contempt must be established with clear and convincing evidence. These differences do not prevent collateral estoppel from precluding Divins's insufficient evidence claim because the Fifth Circuit "has long recognized that res judicata principles may operate to estop one convicted in a criminal proceeding from relitigating in a subsequent civil case questions distinctly put in issue and directly determined in the criminal prosecution." *Meadows v. Evans*, 550 F.2d 345, 349–50 (5th Cir. 1977) (quotations omitted) (citations omitted); *see also* 18-132 LAWRENCE B. SOLUM, MOORE'S FEDERAL PRACTICE-CIVIL § 132.02[4][d][ii] (2009) (explaining that the criminal conviction preclusion argument applies in the collateral estoppel context).

***(2)    Was the factual sufficiency of the contempt order fully and vigorously litigated in the criminal contempt proceeding?***

Factual sufficiency was fully and vigorously litigated as Divins did not concede that she violated the previous orders nor was any stipulation made to that effect. *See Anderson, Clayton & Co. v. United States*, 562 F.2d 972, 992 (5th Cir. 1977) (discussing the meaning of "fully and vigorously litigated" in the context of tax litigation). There was a full trial in which Divins challenged the allegations of contempt made against her. Subsequently, a final judgment was entered in which Divins was found guilty and later sentenced to serve 25 years in prison.

***(3)    Was factual sufficiency necessary to support the conviction in Divins's criminal proceeding?***

Whether there was evidence to support the Bankruptcy Court's finding of contempt was an issue integral to Divins's criminal contempt proceeding. As previously noted, both civil and criminal contempt require evidence that the party violated the court's order. In Divins's criminal contempt case, the jury determined that the evidence established beyond a reasonable doubt that Divins violated the Bankruptcy Court's orders.

***(4)    Are there any special circumstances that would render preclusion inappropriate or unfair?***

Finally, the Court can find no special circumstance or reason that would make preclusion of Divins's insufficient evidence claim inappropriate or unfair.

The Court also notes that an appellant has a heavy burden in any attempt to prove that a bankruptcy court abused its discretion in interpreting and enforcing its own order. *See JTH Tax, Inc. v. H&R Block E. Tax Servs.*, 359 F.3d 699, 705 (4th Cir. 2004) ("When a district court's decision is based on an interpretation of its own order, our review is even more deferential because district

courts are in the best position to interpret their own orders.") (citations omitted). This is uniquely applicable here where Divins has been before the Bankruptcy Court numerous times for violations of the same orders. In light of this fact and Divins's continuous contemptuous behavior, the Court would find it difficult to reverse the Bankruptcy Court's determination that Divins should be forced to return $2,800 of the $6,800 she received from the Velas. Accordingly, the Court determines that the Bankruptcy Court did not abuse its discretion and that collateral estoppel bars Divins's insufficient evidence claim.

## C.     Construction of the Previous Orders

Divins's final argument is that the Bankruptcy Court's previous orders are void because they are vague and ambiguous.[2] From the briefing, it is difficult to discern her arguments regarding the construction of the orders. To begin, Divins cites a Supreme Court case, *Atlantic Cleaners & Dryers, Inc. v. United States*, to support her argument. 286 U.S. 427 (1932). However, *Atlantic Cleaners & Dryers* is not applicable or relevant to this case because it provides no guidance for determining whether an order is vague and ambiguous. Divins's argument is also difficult to construe because, she does not direct the Court's attention to which of the Bankruptcy Court's orders contain vague and ambiguous language. Furthermore, a review of the record shows that at the hearing on the Motion to Show Cause Divins's attorney never indicates which order needs clarification.[3] Despite the inadequacy of Divins's briefing on this issue, the Court assumes that Divins

---

[2]Divins's issue statement also claims that the Bankruptcy Court's previous orders are overly restrictive. However, she does not address this claim in her substantive briefing. Thus, the Court does not address this claim.

[3]Divins also suggests in her brief that the Bankruptcy Court attributes Divins's multiple violations of the court's orders to the ambiguity and vagueness of the orders. After reading the

is challenging the clarity of the Agreed Order[4] and the *Guerrero* Order, which are the orders the Velas claim she violated. The Court disagrees with this assertion and determines that the Agreed Order and the *Guerrero* Order are sufficiently specific, certain, and appropriately restrictive.

The power of judicial contempt is "a potent weapon," and "it should not be used if the court's order upon which the contempt was founded is vague and ambiguous." *Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marin Trade Ass'n*, 389 U.S. 64, 76 (1967); *see also Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992) (citation omitted). An order is "ambiguous" if it is subject to more than one plausible construction. 56 Am. Jur. 2d MOTIONS, RULES, AND ORDERS § 48. An order is "vague" if it is impossible to know what the court has determined. *See Gunn v. Univ. Comm. to End War in Viet Nam*, 399 U.S. 383, 389 (1970). When deciding whether an order is vague and/or ambiguous the court should examine it "from the entire context in which the order was entered." 56 Am. Jur. 2d MOTIONS, RULES, AND ORDERS § 48. Typically, for an order to be valid, it must address the party and give a specific and direct command. *See Int'l Longshoremen's Ass'n*, 389 U.S. at 74; *In re Baum*, 606 F.2d 592, 593 (5th Cir. 1979).

Here, both the Agreed Order and the *Guerrero* Order are far from vague or ambiguous. The applicable portion of the Agreed Order permanently enjoined Divins from the following:

>   (A)   Offering or providing any bankruptcy petition preparation service or activity on behalf of anyone at any time and in any fashion;

---

transcript of the June 17, 2008 hearing that Divins uses to support this assertion, the Court disagrees. That portion of the record only indicates that the Bankruptcy Court would be open to a motion to clarify the order; the court neither suggests or states that this may be the cause of Divins's multiple infractions.

[4]Any references to the Agreed Order in this section includes the First and Second *Gutierrez* Orders as the Agreed Order permanently enjoined Divins from the activities set out in those orders.

> (B) Making any representation of any kind, express or implied, to any individual or to the public that the Defendant or persons associated with her can or would assist or help or ever try to assist or help any individual or persons to "stop foreclosure";
>
> (C) Making any representation, express or implied, that "mortgage brokering services" can or may be able to assist any individual or persons to "stop foreclosure";
>
> (D) Making any representations, express or implied, to any individual or persons that the Defendant or persons associated with her can assist with bankruptcy filings, actually help debtors file bankruptcy cases, or advise individuals or persons with respect to a bankruptcy case.

The applicable portion of the *Guerrero* Order reads as follows:

> Ordered that Ms. Divins no longer use the "flyer," admitted into evidence as Exhibit A, or any flyer which contains express or implied representations that she can assist people to "stop foreclosures" or which uses any language that violates the terms of the [Agreed Order] . . . which was expressly agreed to by Ms. Divins as signified by her signature and the signature of her attorney on the Agreed Order . . .

These orders are clear, and putting them in the context in which they were written and issued makes this even more apparent.

Divins claims that pursuant to the language of these orders "it is entirely possible to find [Divins] guilty every time she accepts the needs of a client and successfully helps them to conclusion or not." The Court agrees. The orders, viewed in the context in which they were written, clearly prohibit Divins from engaging in the above mentioned activities *at all*, regardless of whether or not she believes that she can assist individuals with their bankruptcy proceedings, foreclosures, or both. Divins also claims that the "previous orders" could be interpreted to mean that Divins has to "get out of the business of assisting people entirely with either their foreclosures or mortgage concerns" or that she "not publish those offensive terms in either her flyers or statements." The Court agrees. The

13

orders clearly prohibit Divins from assisting any individual with both their bankruptcy proceeding and foreclosure, as well as issuing fliers that impliedly or expressly communicate that she can provide this type of assistance.

The orders are not vague. They directly tell Divins not to engage in specific behavior. Additionally, the orders are not ambiguous. That the orders give several directives makes them thorough not ambiguous. For Divins to argue that the Bankruptcy Court's orders are vague and ambiguous, implying that she did not know that her behavior with the Velas violated the court's previous orders, is nonsensical. Divins confusion, if any, may be the result of members of the Western District admonishing her both orally and in writing not to engage in this behavior for the past fifteen years and her vain attempts to evade the courts' directives.

## IV. CONCLUSION

After reviewing the record, revisiting Divins's past violations, and her subsequent indictment and conviction for criminal contempt, the Court AFFIRMS the Bankruptcy Court's order requiring Divins to make a $2,800 refund payment to the Velas as it had jurisdiction to do so pursuant to valid and clear orders.

It is so ORDERED.

SIGNED this 15th day of September, 2009.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE